MINNESOTA TITLE INSURANCE & TRUST CO. v. DREXEL et al.

(Circuit Court of Appeals, Eighth Circuit. September 16, 1895.)

No. 580.

TITLE INSURANCE—INTERPRETATION OF POLICY.

The M. Title Insurance Co. issued to D., the holder of a mortgage on certain real estate, a policy insuring him, to an amount named, against loss sustained through defects in the title to such real estate, or liens or incumbrances thereon, existing at the date of the policy. Conditions annexed to the policy provided that no right of action upon it

should accrue until the insured had conveyed or agreed to convey to the company his interest in the property, at a price which, in the case of a title acquired through foreclosure, should be the amount bid at the foreclosure sale; that payment, discharge, or satisfaction of the mortgage indebtedness, except by foreclosure of the mortgage, should annul the policy; and that the company should have an opportunity to defend any suits affecting the title. After the issue of the policy, suits were brought to establish mechanics' liens on the property, claimed to have existed when the policy was issued. The company defended them, but the liens were established, and the property sold to satisfy them. D. foreclosed his mortgage, by publication of notice and sale of the property, and bought it in for the amount due on his mortgage, with interest and costs. D. having died, his representatives offered to convey to the title company for the amount bid at the foreclosure sale, and demanded, in default of a purchase for that amount, that the company redeem the property from the sale under the mechanics' liens. The company declined to do either, and D.'s representatives redeemed the property, and sued the title company for the amount so paid. *Held,* that the purchase of the property by D. at the foreclosure sale, for the amount due on his mortgage, did not cancel the mortgage debt, and so annul the policy, but that the title company was bound, either to buy the property for the amount bid at the sale, or to redeem it from the sale under the liens, and that plaintiffs were entitled to recover the amount paid by them for that purpose.

In Error to the Circuit Court of the United States for the District of Minnesota.

This was an action by John R. Drexel, Anthony J. Drexel, George W. Drexel, James W. Paul, Jr., John R. Fall, John Lowber Welch, and Richard C. Dale, surviving executors and trustees under the will of Anthony J. Drexel, deceased, against the Minnesota Title Insurance & Trust Company, on a policy of title insurance. The plaintiffs recovered judgment in the circuit court. Defendant brings error. Affirmed.

The defendants in error, John R. Drexel et al., on the 7th of March, 1894, filed in the United States circuit court for the district of Minnesota, at Minneapolis, their complaint at law against the plaintiff in error the Minnesota Title Insurance & Trust Company, alleging, in substance, that, on the 1st day of June, 1889, Anthony J. Drexel loaned to Alfred J. Condit $55,000, taking as security therefor seven mortgages on separate parcels of a block of land, and the brick and stone tenements situated thereon, in the city of Minneapolis, which are particularly described in the complaint. That on the 19th of June, 1889, the defendant, the Minnesota Title Insurance & Trust Company, for the consideration of $126, made and delivered to Drexel, the mortgagee, its policy of insurance which is made part of the complaint and reads as follows:

"Capital, $500,000.

"Guaranty Fund with State Auditor, $200,000.

"Policy No. 3,151. Amount, $55,000. Block No. ——.

"Minnesota Title Insurance & Trust Company, a corporation duly established by law in Minnesota, by this policy of insurance, in consideration of the sum of one hundred and twenty-six dollars to it paid, doth hereby covenant that it will, for the period of twenty-five years from the date hereof, indemnify, keep harmless, and insure Anthony J. Drexel, the mortgagee named in seven certain mortgages executed by Alfred J. Condit and Nellie D. Condit, his wife, as mortgagors, dated June 1st, 1889, and filed for record in the office of the register of deeds of Hennepin county, Minnesota, June 5th, 1889, at 5 o'clock and — minutes, p. m., and all persons claiming the

estate and interest of said mortgagee under said mortgage by descent, or by will, and all other persons to whom said mortgage may be assigned, from all loss or damage not exceeding fifty-five thousand dollars, which the said insured shall, during said period of twenty-five years, sustain by reason of defects of the title of said mortgagors to the real estate or interest described in Schedule A, hereto annexed, or by reason of liens or incumbrances affecting the same at the date hereof, excepting only such as are set forth in Schedule B; subject to the conditions and stipulations hereto annexed and together with said schedules made a part of this policy. This policy is issued upon an application numbered 1,137½, which application is agreed by all parties claiming hereunder to be a warranty of the facts therein stated. [Signed by the Company.]"

The conditions of the policy annexed to and made a part of it, which are material to be considered in the decision of this case, read as follows:

"No right of action shall accrue under this policy until the expiration of thirty days after notice in writing to the company of eviction or final judgment as above, and until the insured (unless absolved therefrom by the company) has, at the company's option, either assigned and conveyed, or in writing agreed on demand to assign and convey, to the company, or to such person as it may name, all the right, title, and interest of the insured in and to said above-described real estate, or interest, at the following price, viz.:

"(a) If the interest of the insured shall then be merely a mortgagee's interest, or still subject to redemption, the price to be paid shall be the amount then remaining unpaid on said mortgage indebtedness, or the amount necessary to permit such redemption.

"(b) If the interest of the insured shall, by foreclosure and the expiration of the period of redemption, have matured into an ownership in fee simple, the price to be paid, unless determined by mutual agreement, shall be the amount bid at said foreclosure sale, with interest thereon at legal rate from the date of such foreclosure sale, together with any and all subsequent expenditures by the insured for improvements, taxes, or assessments on said real estate, with interest at the legal rate on each of such expenditures, from the date of the making thereof, less any sum or sums received by said insured from any partial redemption or sales of said real estate.

"(4) As long as the interest of the insured in said real estate consists of a mortgagee's interest, and subject to redemption, the liability under this policy shall not exceed the amount at any time remaining unpaid on the mortgage indebtedness, and the company may, at its option, at any time, pay the amount then remaining unpaid on said mortgage, and in that case the mortgagee or his assigns shall by proper instrument assign to this company said mortgage, together with said mortgage note and debt, or the portion thereof remaining unpaid. Any assignment of said mortgage shall carry with it the ownership of this policy, without notice to or assent of this company, excepting only an assignment to the original mortgagor or mortgagors, his or their heirs or assigns, which will avoid and terminate this policy, unless consented to in writing by this company. Payment, discharge, or satisfaction of said mortgage indebtedness (except by foreclosure of said mortgage), or the passage of title (except by will or descent) acquired by the insured by foreclosure of said mortgage, or assignment of this policy separate from said mortgage, shall fully terminate, annul, and avoid this policy, and all liability of the company thereunder.

"(5) This company will, at its own cost and charge, defend the insured in all actions of ejectment, or other proceedings founded upon a claim of title or incumbrance, prior in date to this policy, and not herein and in Schedule B excepted, reserving, nevertheless, the option of settling the claim or of paying the amount of its liability at that time under this policy; and payment, or tender of payment, of such amount, shall determine all liability of the company thereunder. In case any such action or proceeding is begun, and the insured shall be made a party thereto, or shall otherwise learn thereof, it shall be the duty of the insured to at once notify the company thereof in writing, and secure to it the right to defend the action or proceeding, and to give all possible assistance therein. If such notice shall not be given, and such right to defend be secured to the company in such action or proceeding,

at once after the insured shall acquire knowledge of the commencement of such action or proceeding, then this insurance and policy shall be void; provided, however, that failure to notify shall in no case prejudice the claim of a mere mortgagee not a party to such action or proceeding, or not served with summons therein (except by publication), or not having any knowledge of such action or proceeding."

It is alleged that, at the date of the mortgages, and at the time of the issuance of the policy of insurance, there were mechanics' liens on the mortgaged premises which were afterwards adjudged by the supreme court of the state of Minnesota to be prior and superior to the lien of the mortgages; that when suit was brought to enforce the mechanics' liens, Drexel, the mortgagee and insured, notified the defendant company, and that the company appeared and defended the action in Drexel's name; that afterwards the mortgaged property was sold to satisfy the mechanics' lien judgments for the sum of $31,360, and the sale duly confirmed; that default was made in the payment of the mortgage debt to Drexel, secured by the seven mortgages, and that each of these mortgages was, in the month of March, 1890, duly foreclosed by publication of notice, and sale of the mortgaged premises in the mode prescribed by the laws of the state of Minnesota, and that Drexel, the mortgagee, became the purchaser of the same for the sum of $58,551.93, the amount then due on the mortgages, with costs; that the property was not redeemed from this sale, and on the 11th day of March, 1891, the purchaser, Drexel, became the owner in fee of the same by virtue of his purchase thereof at the foreclosure sale; that Drexel died on the 30th of June, 1893, and the plaintiffs and George W. Childs, since deceased, were on the 31st day of October, 1893, duly appointed his executors; that on the 2d day of January, 1894, the plaintiffs served the defendant with written notice setting out all the foregoing facts, and offering to convey to the defendant, or to such person as it might name, all the right, title, and interest of the insured in the mortgaged premises, upon the payment by the defendant company of the amount paid therefor at the foreclosure sale, and interest thereon, and demanding of the defendant, if it declined to make this payment and accept such conveyance, that it redeem the premises from the sale under the mechanics' lien judgments. To this demand the defendant made the following reply:

"Minneapolis, January 15, 1894.

"Gentlemen: Referring to policy of this company No. 3,151, issued to Anthony J. Drexel, and the notice and demand thereunder made by you January 2nd, 1894, allow to say: We are advised that no obligation rests upon this company to redeem from the judgment sale mentioned by you in said notice, and the board of directors has not felt at liberty to make such redemption unless legally bounden to do so. We therefore decline to purchase the interest of those claiming under Mr. Drexel, or to redeem the premises described in the policy from the sale made November 21, 1893, under judgment of Hennepin county district court, as demanded by you. If it shall be held that by redeeming from said sale a loss shall be suffered by you, and that loss be covered by our policy, we will cheerfully meet it, as it is not our desire to attempt to avoid our just obligations.

"Yours, respectfully,

"Minnesota Title Insurance and Trust Company,
"By J. U. Barnes, President."

Thereupon the plaintiffs were compelled to redeem the property from the sale under the mechanics' lien judgments, which they did by paying to the sheriff on the 1st day of March, 1894, the sum of $31,994.77, being the amount required by law to effect such redemption, and the complaint prays for judgment for this sum and interest. The complaint avers that the mortgages and other papers and conveyances relating to the mortgaged premises were duly recorded in apt time in the proper recorder's office. The defendant interposed a general demurrer to the complaint, which was overruled, and the defendant declining to plead further, judgment was rendered in favor of the plaintiffs for the sum claimed, and the defendant thereupon sued out this writ of error.

Daniel Fish, for plaintiff in error.

Charles J. Bartleson, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The only error assigned is the overruling of the demurrer to the complaint. The contention of the learned counsel for the plaintiff in error is that the foreclosure of the mortgages by notice and sale, and the purchase of the mortgaged premises by the mortgagee for the full amount of the mortgage debt, "canceled the mortgage debt as completely as though it had been paid in cash," and that such satisfaction of the mortgage debt inures to the benefit of the insurer, and absolves it from liability on its policy as fully as if the mortgage debt had been extinguished by a cash payment made by the mortgagor. The contention is not sound. The cases cited by counsel to support this contention have no application to this case.

The case at bar depends upon the construction of the policy of insurance, and the same liberal rules of interpretation that apply to fire and other policies of insurance are applicable to the policy in suit. The policy in suit, on the point in question, is not ambiguous, nor its meaning doubtful; but if there was room to doubt as to its proper interpretation, the doubt would have to be resolved in favor of the insured, according to the settled canon of construction applicable to such contracts. National Bank v. Insurance Co., 95 U. S. 673, 678; Thompson v. Insurance Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019; 2 Whart. Cont. 670; Kahnweiler v. Insurance Co., 14 C. C. A. 485, 67 Fed. 483.

The insurer is not a surety. The defendant company, for an adequate consideration, agreed to "indemnify, keep harmless, and insure" Drexel, the mortgagee, "from all loss or damage, not exceeding $55,000," the amount of the mortgage debt, which he or his assigns might sustain by reason of defects in the title to the mortgaged premises, or by reason of liens or incumbrances thereon existing at the date of the policy. The contract is plain and explicit on this point. In a word, it is a guaranty that the mortgagee should not suffer any loss or damage by reason of defects in the title to the property, or liens or incumbrances thereon, existing at the date of the policy. Under this guaranty, if the mortgaged property, with a clear title and free from incumbrances, was worth the amount of the mortgage debt, the mortgagee could confidently rely upon the sufficiency of his security. The mechanics' liens upon which the mortgaged property was sold were liens upon the property at the date of the policy. The defendant company, nevertheless, refused either to pay these prior liens, or to pay the insured the amount bid for the property at the foreclosure sale, which was the amount of his mortgage debt, thus forcing the insured, in order to protect his security and his title, to redeem the property from the sale on the mechanics' liens.

The policy provides that, where by foreclosure the insured has acquired the title to the property, the price to be paid by the insurer "shall be the amount bid at said foreclosure sale." The defendant was obligated, by the terms of the policy, either to pay this amount, or to relieve the property from all liens existing thereon at the date of the policy. It refuses to do either, and seeks to escape all liability by putting the burden of freeing the property from the liens existing thereon at the date of the policy upon the mortgagee, on the ground that, at the sale of the property under the mortgages, the mortgagee bid the full amount of his mortgage debt, and thereby himself assumed the burden of paying off the mechanics' liens. Under the terms of the policy, the mortgagee had a right to look to the defendant for the extinguishment of all liens upon the property which existed at the date of the policy, and to gauge his bid on the assumption that the defendant would discharge its obligation in this regard. The contention of the defendant is in the teeth of a very plain provision of the policy which declares:

"Payment, discharge, or satisfaction of said mortgage indebtedness (except by foreclosure of said mortgage) * * * shall fully terminate, annul, and avoid this policy, and all liability of the company thereunder."

The case at bar falls directly within this exception. We need not consider what effect this provision would have where the property was purchased by a stranger at the foreclosure sale. Beyond controversy, it includes and binds the parties to the contract, and is applicable to every case where the mortgagee, insured, becomes the purchaser of the property at the foreclosure sale for the amount of his mortgage debt. The judgment of the circuit court is affirmed.