AMERICAN–FIRST TITLE & TRUST COM-
PANY, a Corporation, Plaintiff in Error,

v.

FIRST FEDERAL SAVINGS & LOAN AS-
SOCIATION OF COFFEYVILLE, KAN-
SAS, a Corporation, Defendant in Error.

No. 40611.

Supreme Court of Oklahoma.

July 13, 1965.

Rehearing Denied Dec. 14, 1965.

Application for Leave to File Second Petition
for Rehearing Denied June 21, 1966.

Richard H. Godfrey, Bruno H. Miller, Herbert Standeven, Oklahoma City, for plaintiff in error.

Holliman, Brewer & Worten, Bartlesville, for defendant in error.

HODGES, Justice.

From the evidence it appears that Harold Thomas and Pauline E. Thomas, husband and wife, of Vinita, Oklahoma, executed to First Federal Savings & Loan Association certain mortgages secured by real property in Craig County, Oklahoma, all of which were duly filed in Craig County, as follows:

1. Mortgage dated May 15, 1958, in the amount of $25,000;

2. Mortgage dated Jan. 8, 1959, in the amount of $6,000;

3. Mortgage dated Nov. 23, 1959, in the amount of $10,000.
(this mortgage also covered property in Washington County.)

Mr. and Mrs. Thomas also executed another mortgage to First Federal which was secured by certain property situated in Washington County in the amount of $32,000 dated July 7, 1959, and filed of record in Washington County. That mortgage was covered by a mortgage title policy issued by American-First through Mussel-man Abstract Company of Bartlesville, Oklahoma. The second mortgage dated Nov. 23, 1959, in the amount of $10,000 as is set forth opposite the numeral 3 in the Craig County list of mortgages above was not recorded in Washington County until subsequent to the time certain material-men's liens were filed against the Washington County property amounting to a total of $9,580.58. All the mortgages became delinquent and First Federal brought foreclosure of its mortgages in the United States District Court for the Northern District of Oklahoma. The judgment there gave First Federal a prior lien on the Craig County property under mortgages 1, 2 and 3, but awarded the lien claimants, co-equally, priority over the mortgage lien of First Federal insofar as the Washington County property covered in the Nov. 23, 1959, mortgage in the amount of $10,000 was concerned, subject to its first mortgage dated July 7, 1959, in the amount of $32,000. At Marshal's Sale the Craig County property was bid in by First Federal, the sole bidder.

The Washington County property was sold for $45,000 to lien claimant, Limestone Lumber Company, and disbursement of the proceeds, after the first mortgage for $32,-000.00, interest and costs of sale, left $3,-631.71 for disbursement to the lien claimants. First Federal obtained judgment in the district court of Washington County for such amount, attorneys' fees and costs in the foreclosure action and this action against American-First. The latter seeks reversal here.

American-First submits six propositions for reversal of the judgment.

Its first proposition is that the trial court did not have jurisdiction of the action. Thereunder, it is urged that the proper venue of the action was in Craig County where the title guaranty policy was executed, or in Oklahoma County where American-First's offices were located; that since plaintiff was suing for a money judgment upon a contract of mortgage title insurance, venue of the action, being transitory, is limited to those two counties. That the question of venue is a matter of jurisdiction and the question of venue having been raised, the motion to quash service of summons should have been sustained and the cause dismissed because the trial court was without jurisdiction.

It is shown that the contract was negotiated and completed at Vinita, in Craig County, Oklahoma, the policy being issued to First Federal by Vinita Title Company, an abstracter authorized by American-First to issue title guaranty policies in its name. While initially the manager of Vinita Title Company was named as a defendant also, the residence of such person was in Craig County, Oklahoma, not Washington County, and plaintiff dismissed as to him, which left American-First the sole defendant, and its principal place of business is in Oklahoma County.

12 O.S.1961, § 134 provides:

"An action, * * * against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office

or place of business, or in which any of the principal officers thereof may reside, or be summoned, or in the county where the cause of action or some part thereof arose."

12 O.S.1961, § 139 provides:

"Every other action must be brought in the county in which the defendant or some one of the defendants reside, or may be summoned * * *."

The question of venue of this cause must be resolved upon a determination of the final phrase of Sec. 134, supra, "or in the county where the cause of action or some part thereof arose," and especially the last five words of phrase, "or some part thereof arose."

Whether venue of the present action could have been in Craig County or Oklahoma County is not an issue, but of sole concern is whether venue was in Washington County.

If the action is rightly brought in Washington County, 12 O.S.1961, § 154, authorizes the issuance of summons from such county to the defendant in Oklahoma County, and if rightly brought in Washington County the Washington County District Court had venue of the action and jurisdiction over the corporate defendant.

The title policy sued on guaranteed First Federal against loss or damage, not exceeding $10,000.00, which the beneficiary shall sustain by reason of the execution of the mortgage "by reason of the invalidity of the lien thereon upon said land, * * * or by reason of any defect in, or lien or encumbrance on said title at the date thereof, or by reason of any statutory lien for labor or material, * * * which now have gained or hereafter may gain priority over the lien upon said land of said mortgagee * * *." It referred to the mortgage as being filed of record in Craig County. Under "conditions" of the policy was provision for the insurer defending against litigation consisting of action or proceedings brought against the beneficiary founded upon a defect, lien or encumbrance guaranteed against by the policy.

The mortgage covered land in Craig County, but also real estate in Washington County against which liens of materialmen had been filed and which were subsequently adjudged to have priorty over the beneficiary's mortgage lien on the Washington County real estate in a foreclosure instituted by it in Federal Court in Tulsa. At Marshal's Sale in Washington County a lien claimant purchased the property covered by First Federal's mortgage. The sale proceeds in the amount of $3631.71 was apportioned to the lien claimants in preference to First Federal's mortgage.

It appears that having guaranteed the priority of First Federal's mortgage lien on the Washington County property, and having agreed to establish priority thereof over alleged defects in title, when it failed to comply therewith, the recitation of such fact was required in an action for money judgment for damages, the same being an element constituting the cause of action.

In Commonwealth Co. v. Bradburn, 170 Okl. 403, 40 P.2d 1035, the Supreme Court of the United States was quoted in the case of Chesapeake & Ohio Railroad Co. v. Dixon, 179 U.S. 131, 21 S.Ct. 67, 70, 45 L. Ed. 121, as defining a cause of action, to-wit:

" 'The cause of action manifestly comprised every fact which plaintiff was obliged to prove in order to obtain judgment, or, conversely, every fact which defendants would have the right to traverse.'

"The most widely quoted definition as to what constitutes a cause of action is from Pomeroy's Code Remedies, which is as follows: 'A primary right possessed by the plaintiff and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right or duty; a remedial right in favor of the plaintiff and a remedial duty resting upon the defendant springing from delict: and finally the remedy or relief itself. Every action, however complicated or

however simple, must contain these essential ingredients. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action.'"

■■ The parties hereto each refer to the decision in Holt v. Modern Motors, Okl., 265 P.2d 464. Therein it was said a cause of action arises in that jurisdiction where the act is done which gives the plaintiff his cause of complaint. The act done in the cited case was seen to be the taking of parts from the block of the motor and the damage was done and the cause of action arose in Pottawatomie County. The ruling of this court in the Holt v. Modern Motors case, supra, as applied to the case before us supports First Federal's contention that the act done which constitutes the cause of action was the defect in title to the Washington County property by reason of which First Federal sustained loss, against which American-First had agreed but failed to defend or make whole.

In Commonwealth Life Ins. Co. v. Hutson, Okl., 271 P.2d 722, the insurer appealed from a judgment rendered in Seminole County District Court for the proceeds of a family polio policy. Service of summons was obtained upon the insurer at its home office in Tulsa County. In denying the insurer's contention that no part of the cause of action arose in Seminole County and that the action should have been brought in Tulsa County we said at page 724 of the Pacific Reporter Second the cause of action, sickness, arose in Seminole County, and held:

"[A]n action against domestic insurance company may be brought in county where cause of action or some part thereof arose." 12 O.S.1961, § 134.

"Cause of action for proceeds of policy covering poliomyelitis and encephalitis arose in county where insured person was stricken with such diseases, and action for proceeds was brought in such county."

■ In Consolidated Fuel Company v. Gunn, 89 Okl. 73, 213 P. 750, a factual situation different from that in the case at bar was before this court, but applicable here, we think, is that part of such opinion which states:

"* * * in the discussion of the question of venue under statutes containing the provision that the action may be brought in the county where 'the cause arose, or some part thereof,' the rule is announced 'to be a part of the cause; however, the act relied on for the venue must be one of the facts which, under the substantive law, constitute the cause of action.'"

Applying this rule to the instant case the cause of action of First Federal consisted of an element in the pleading of the primary right arising under the contract of mortgage title insurance, and the wrong, or delict, of American-First in violating the covenant of the contract by there being filed liens against the real property in Washington County, the county where they were required by law to be filed to have validity, and which were adjudicated to be prior liens, without resistance from American-First, which constituted another element of First Federal's cause of action. While the demand which was made by First Federal was refused by American-First, we see that as but another and final element of the cause of action.

Therefore, if some part of the cause of action arose in Washington County, unless the word "accrued" be supplied in the statute as an adjective to the term "cause of action," a meaning for which no legislative intent is shown, nor is it urged, Sec. 134, supra, would place venue of the action in Washington County under the facts here and it is not necessary herein to distinguish as between local and transitory actions.

American-First submits as a cause for reversal of the judgment of the trial court the proposition: A mortgage guaranty policy is a contract of indemnity and until a loss has been sustained or paid no liability exists against an indemnitor.

■ It is contended by American-First that the words of the title policy:

"American First Title & Trust Company * * * does hereby guarantee First Federal, etc., * * * against loss or damage not exceeding $10,000.-00, which the Beneficiary shall sustain, etc., * * *"

shows that until loss or damage had been sustained by the insured based on defects in the title which were in existence at the time the contract, or policy, was entered into the contract was ineffective. That the intention to indemnify is apparent from the instrument, and it should be construed as a contract of indemnity to which the rule of 15 O.S.1961, § 427, Subsec. 2 applies, i. e., that the person indemnified is not entitled to recover without first paying the loss or damage. American-First's position is that the contingency contracted against here is mere loss or damage, rather than liability, and First Federal cannot recover prior to making payment or otherwise suffering an actual loss or damage.

And a contrary intention of the parties is evident from the agreement of the indemnitor, or insurer, here to "* * * without undue delay defend the beneficiary in all litigation * * * or defenses * * * against foreclosure or sale if said land in said satisfaction or said indebtedness * *" and "* * * The liability of the Company under this guarantee shall in no case exceed in all the actual loss of the beneficiary and cost and attorneys fees which the Company is obligated hereunder to pay."

■ In the face of the admission by counsel for American-First that the loss of the $3631.71 disbursed to the lien claimants in preference to the mortgage lien which First Federal had guaranteed against defect of title it is clear that loss occurred. Counsel stipulated that the lien claimants got that $3631.71. It was therefore unavailable to apply on the indemnitee's mortgage judgment.

In Minnesota Title Ins. & Trust Co., v. Drexel (CA8 Minn.), 70 F. 194, it was determined that where a title policy is issued to a mortgagee he may recover the amount which he has been compelled to pay to prevent a sale under a mechanic's lien. The conclusion seems sound. In the instant case the lien claimants obtained a judgment which was decreed to be prior to the mortgage judgment of the insured and proceeds of the Marshal's Sale went to the lien claimants with the same effect as if the insured had itself disbursed the $3631.71. We think American-First's second proposition lacks substantial merit as a cause of reversal of the judgment of the trial court.

Proposition III.

"That the trial court erred in rendering judgment without requiring the preponderance of evidence necessary to establish the allegations under the petition and the existence and extent of loss or damage." .

In the argument of this proposition it is conceded that the first and second mortgages on the Craig County property covered only the Craig County property and that the $10,000.00 mortgage covered the property in Craig County and also property in Washington County. The contention of the plaintiff is that the policy issued covered the property in Washington County as well as the property in Craig County. The policy issued was executed on the standard form of the defendant, but for lack of space the description of the property was on a separate sheet stapled as a "rider" to the Schedule A thereof. With the exception of the additional description of the Washington County property the copy attached to plaintiff's petition was identical to the carbon copies in the files of American-First and Vinita Title Company. On the strength of the carbon copies, American-First denied liability against defects of title as to any property other than that in Craig County. It also denied that its agent, Vinita Title Company, or its vice president and manager, DeArmon, had any authority to act for it in issuing title guaranty policies covering property outside of Craig County. The reply filed by First Federal denied the

allegations of the answer which were contrary to the allegations of the petition.

In the trial First Federal introduced the policy, some correspondence relating to it, and the testimony of Pearle Frey, secretary in its Coffeyville office. There was a failure of proof American-First says, as to execution of the policy sued on, a failure of proof as to the extent of the authority of Vinita Title Company, a failure of proof as to American-First's duty to check the records in Washington County, and a failure to substantiate First Federal's claim of loss. It is contended that by itself plaintiff's evidence did not substantiate the allegations of its petition and was subject to a demurrer for insufficiency, which defendant interposed at the close of plaintiff's testimony, and which the trial court should have sustained.

While it is noted that the testimony of Pearle Frey was that she did not know who actually received and put into the files of plaintiff's office the title policy sued upon, she was the scrivener of First Federal's letters to Vinita Title Company, the first of which enclosed the borrowers' note and mortgage and requested a final title policy with no exceptions except the mortgages to First Federal, and the second letter returning the policy to Vinita Title Company, with instructions to "please include the legal description which is typed on the mortgage." These letters were received, defendant admits. She testified that subsequently, before the petition in this case was prepared, she took from the company's files the policy containing the description of the Washington County property which had been requested in the letters.

 It appears that the trial court presumed that in regular course the mail was opened and the policy placed in the plaintiff's file by office personnel which appears to be a reasonable assumption. A witness for defendant denied that he had returned the policy to plaintiff in the form upon which the suit was brought. But plaintiff's evidence relative to the matter supports the fact presumed by the trial court, and, although other testimony conflicted, it seems the conclusion of the court was supported to some extent by evidence. We have held that where there is any evidence reasonably tending to support the findings and judgment of the trial court in a jury waived law action the finding and judgment will not be disturbed on appeal because of insufficiency of evidence. Bullard v. Caulk, 206 Okl. 353, 243 P.2d 691.

 Counsel for American-First in his opening statement said:

"Now, along in the latter part of November, Harold Thomas negotiated a further mortgage for $10,000.00 with First Federal Savings and Loan Association of Coffeyville. Now, this mortgage described both the property in Craig County and also described the property in Washington County. This mortgage was sent to the agent at Vinita with the request that a further Title Policy be written on this mortgage on the Craig County property. Let me back up and say there was no express instructions in that letter of transmittal that it was to be on the Vinita property. Just sent the mortgage down with the application that a further Mortgage Guaranty of $10,-000.00 be written. Now, the only fly in the ointment is the fact that this mortgage described both pieces of property, both the one in Vinita and the one in Bartlesville. So the agent, the Vinita Title Company, in Craig County, issued a third Title Guaranty to cover this $10,000.00 mortgage and sends it back to the Coffeyville people, the plaintiff in the case and the lender of these funds."

Nor can the contention that plaintiff failed to offer evidence as to the extent of the authority vested by American-First in its agent, Vinita Title Company, be considered meritorious in view of the stipulation in the record of counsel, as follows:

"Mr. Miller: I'll agree to a stipulation to this effect: That the Vinita Title

Company was the authorized agent in Craig County to write mortgage guaranties for the American-First Title and Trust Company * * * It was the agent for the purpose of writing guaranties, nothing more * * *."

"Mr. Miller: The contract between the American-First and Vinita Title Company, as it is with all agents, enables or gives an option to the agent to write a policy in any County in the State * * but it is our contention, and we so specifically provide, that the contract enables the agent to write a policy in any County."

■ The contention that no duty was imposed upon American-First to check the records in Washington County or to file First Federal's mortgage there is without merit. Under the circumstances presented here, the obviousness of it being to American-First's advantage to check the records of Washington County before undertaking to insure against defects a mortgage covering property situated in such county is patent. But necessity for an insured to prove such a duty is not seen.

■ The contention that plaintiff failed to prove loss or damage would seem to ignore the introduction in evidence of the federal court records in the foreclosure proceedings and the stipulation of counsel that distribution of ·$3631.71 was made to the lien claimants in preference to First Federal's $10,000.00 mortgage. The stipulation was:

"Mr. Miller: I'll stipulate that that is what the court held; that that mortgage was subordinate to those liens and that the lien claimants got that $3600.00. No question about that. I'll stipulate that."

■ Statements, admission and stipulations of counsel, made deliberately and intelligently during trial, and unretracted, constitute high species of evidence. Oklahoma Natural Gas Co. v. Walker, Okl., 269 P.2d 327, and Wester v. Lucas, 177 Okl.

147, 57 P.2d 1179. Given effect, such operates to lessen the quantum of proof required by an opposing party to present evidence.

The fact that defendant's negligence must be established independently in a case on trial was, in Kellam v. Akers Motor Lines, 133 N.J.L. 1, 42 A.2d 261, held not to preclude admissions against interest by him. 31A C.J.S. Evidence § 317, p. 808, states:

"An admission of a party to the record is original, primary, independent, and substantive evidence of the fact or facts covered thereby and it may be used to make out the opponent's case by proving or disproving a fact in issue; * * *."

American-First next submits the proposition:

"That the purchasing by the mortgagee at judicial sale of mortgaged property without requesting court order for deficiency judgment requires mortgagee to take it in full satisfaction of the debt."

It submits that First Federal recovered judgment on three separate mortgages and bid in the property in Craig County for an amount less than the amount of the first mortgage. It did not move for an order granting a deficiency judgment against the mortgagors as is provided by 12 O.S.1961, § 686 which statute includes the following:

" * * * Notwithstanding the above provisions no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this Act after the mortgaged property shall have been sold. * * * If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceedings shall exist. * * *"

Therefore, it contends First Federal was unable to collect any deficiency judgment

against the mortgagors and as a consequence cannot claim a loss under the title policy which protected it against loss by reason of title defects.

 But the provision of Sec. 686, supra, that no judgment shall be enforced for any residue of the debt remaining unsatisfied after the mortgaged property shall have been sold concerns judgments in actions for the enforcement of mortgages, deeds of trust, or other liens or charges upon property. The section does not preclude the entering into mortgage title insurance contracts against defects nor recovery of loss or damages by the insured from the insurer in case of a breach thereof where the insurer is not a party to the foreclosure proceedings. Of the extent of interpretation to be given a statute, it is said in 50 Am.Jur. Statutes, Sec. 229:

"The general rule is that nothing may be read into a statute which is not within the manifest intention of the Legislature as gathered from the Act itself and that a statute should not be construed any more broadly or given any greater effect than its terms require."

50 Am.Jur. Statutes, Sec. 225 reads:

"A further general rule is that a statute is open to construction only where the language used is ambiguous and thus requires interpretation."

Section 686, supra, has been held inapplicable, by reason of 42 O.S.1961, § 172, to a lien foreclosure. Price v. Shell Oil Co., 199 Okl. 193, 185 P.2d 211; Local Fed. Sav. & Loan Ass'n v. Davidson & Case Lbr. Co., 208 Okl. 155, 255 P.2d 248. And in West Nichols Hills Water Co. v. American-First Trust Co., 195 Okl. 428, 158 P.2d 691, it was held that a right of action held by a mortgagor against a beneficiary under the mortgage which arose out of the breach of an independent contract between the mortgagor, or other on its behalf, and such beneficiaries are not germane to the controversy involved upon the foreclosure of such mortgage.

 In this case there was evidence produced that three days following the U. S. Marshal's Sale of the Craig County and Washington County property First Federal inquired of American-First the latter's desire as to whether a motion for deficiency judgment should be filed. It was shown that no reply to such letter of inquiry being received, First Federal again wrote American-First for directions as to whether a deficiency judgment should be sought against the mortgagors. That American-First declined to indicate its desire or give instructions concerning the subject, and First Federal, realizing that the mortgagors were insolvent, as did also American-First, did not seek a deficiency judgment. American-First was not a party to the foreclosure proceedings, although it was fully informed before institution of the foreclosure proceedings and throughout the foreclosure. The instant controversy between First Federal and American-First does not arise under Sec. 686. The quoted portion of Sec. 686 does not appear germane to the issues here, nor is it urged by American-First that in First Federal's prosecution of the foreclosure proceeding that it did anything that would tend to jeopardize the rights of American-First under the mortgage title policy upon which suit is here brought.

American-First submits a proposition that: The acquisition by the mortgagee at judicial sale of the mortgaged property resulted in a merger of the legal and equitable titles in the same party and extinguished the mortgage and any claim thereunder or in connection therewith.

Under this proposition it is urged that any possible claim under the mortgage guaranty policy must be predicated upon the validity and legal existence of the mortgage; that by virtue of 42 O.S.1961, § 22 the mortgage liens in the case at bar were extinguished and only the judgments obtained thereunder remained as a legal right to the mortgagee. That section provides:

"The sale of any property on which there is a lien, in satisfaction of the

claim secured thereby, * * * extinguishes the lien thereon."

This section was said in Yoder v. Robinson, 45 Okl. 165, 145 P. 775, to be merely declaratory of the doctrine of merger, and subject to the same exceptions. American-First views that case, and other decisions, including In re Bartlett Oil & Gas Corp. (D.C.Okl.), 44 F.2d 616, as resulting in the extinguishment of the mortgage lien upon the grant of a judgment in foreclosure thereof, and every right and remedy under it, except that which is reserved by foreclosure decree for future determination. The application of that concept of such authorities to the facts in the case at bar is seen by it to result in a cessation of existence of First Federal's $10,000.00 mortgage lien upon the Washington County realty and all rights thereunder became legally dead after First Federal bought the Craig County realty at Marshal's Sale.

Yoder v. Robinson, supra, contains a quotation from 2 Pomeroy's Equity Jurisprudence Sec. 788 pertaining to the doctrine of merger, in which it is pointed out that a merger of estates is dependent upon intent of the mortgagee and is a question of fact, and if it appears from all the circumstances to be for the benefit of the party acquiring both interests that a merger shall not take place, but that the equitable or lesser estate shall be kept alive, then his intention that such result should follow will be presumed, and equity will carry it into execution by preventing a merger, and by treating the equitable or lesser interest as subsisting, and by admitting all the consequences for the protection of the party with respect to other matters, which necessarily result from the fact of the equitable estate being left in existence. We do not see that the rule therein stated has been specifically abrogated in the other decisions mentioned by American-First. Even if it be conceded that the purchase by First Federal of the Craig County property by application of its bid on its first mortgage in said county that its second mortgage and its third mortgage, insofar as it covered Craig County

property, was merged in the purchase of the Craig County property, it does not follow that the $10,000.00 judgment lien on Washington County property was destroyed when the Washington County property was sold for a sum no part of which was paid on the $10,000.00 mortgage, but $3631.71 would have been available for application thereon were it not for the payment under court order of said amount to three prior lien claimants. Under the facts here prevailing the said contention is without substantial merit.

The final contention of American-First is made under the proposition that the trial court erred (1) in granting an additional attorney's fee for prosecution of the mortgage foreclosure action in federal court to that provided therein, and (2) for rendering judgment for an attorney's fee herein.

In the case at bar a judgment was granted First Federal for attorneys' fees for the services rendered by the attorneys for First Federal to American-First in the foreclosure proceedings in federal court. American-First adopts the position that in the foreclosure the plaintiff therein was awarded judgments for attorneys' fees as was provided for under the terms and conditions of the several mortgages, while First Federal contends that the allowance of attorneys' fees herein made was for services rendered by the attorneys for First Federal to American-First pursuant to the terms of the title policy which guaranteed payment of attorneys' fees for defending against lien priority and in the handling of the present case.

The policy provided in its "Conditions and Stipulations" for the defense by insurer of litigation in which the insured should become involved founded upon a defect, lien or encumbrance guaranteed against by the policy and in cases where the insured is permitted or required by insurer to prosecute or defend any action or proceeding the insurer shall be liable to pay, and reimburse the insured, for all costs and attorneys' fees.

42 C.J.S. Indemnity § 13, p. 586, states:

"As a general rule an indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees, and reasonable and proper legal costs and expenses, which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified, provided that under all the circumstances of the case he acts in good faith and with due diligence in prosecuting or defending such suits. This rule is especially applicable where the indemnitor is notified and given an opportunity to contest the adverse litigation but fails or refuses to do so; or where the employment of counsel is with the knowledge of the indemnitor. Where the contract of indemnity expressly includes attorney's fees and legal costs, in the matter indemnified, the extent to which the indemnitee is entitled to recover such fees and costs depends on the terms of the particular contract. * * *"

In this case it is contended by American-First that no additional services were required to be performed by First Federal's attorneys in the foreclosure proceedings arising out of the existence of the title policy and that the duty undertaken by such attorneys for representing their client required the fullest service regardless of any other factors which were involved. The holding of Thomas v. Lewman, 190 Okl. 37, 120 P.2d 341, that an attorney cannot legally claim compensation for services for the incidental benefits and advantages to one, flowing through services rendered to another person by whom the attorney may have been employed is relied upon by American-First. But that holding is not the whole story for the succeeding paragraph of the syllabus reads:

"Where the facts and circumstances in evidence are such that it may be as readily inferred that an attorney was employed by and represented either of two persons, the question (of which of the two persons employed the attorney and whose interest the attorney represented) is one of fact for a jury."

In the instant case all the circumstances shown parallel the requirements of the general rule of the text above quoted. From prior to the filing of the foreclosure American-First was informed by First Federal of the outstanding lien claims and furnished copies of the pleadings prior to the filing thereof. After conferences with the general counsel for American-First the latter was not made a party to the proceeding due to the seeming recognition of liability under the title policy. Although not entering an appearance at the pre-trial, American-First's counsel was present. All of the legal work leading to the adjudication of the priority of liens was done by attorneys for First Federal with knowledge, consent and request by American-First. The evidence was that after the sale of the property the lien claimants sought disbursement to them of approximately $7700.00 of the proceeds of the sale; that American-First did not oppose the contention of the lien claimants and that the duty of submitting briefs in opposition to such contention devolved upon First Federal whose attorneys prevailed in the briefing and presentation to the federal court and as a result only $3631.71 of the sale proceeds was disbursed to the lien claimants resulting in a reduction of liability to American-First of about $4000.00.

The testimony of First Federal's attorney, under cross-examination of the General Counsel for American-First, was that American-First thrust all of the work of sustaining the sufficiency of the first mortgage in Washington County as being prior to the lien claims upon the attorneys for First Federal although by the issuance of the policy American-First became obligated to defend the insured in the event priority of the mortgage was challenged, and to defray all costs and attorneys' fees incident thereto. The testimony given as to a reasonable fee for such services was unques-

tioned other than that the insurer ought not be required to pay any part thereof. Under the express terms of the mortgage title policy and the evidence adduced the question was one of fact and the trial court's determination thereof will not be disturbed.

The judgment is affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN and BERRY, JJ., concur.

BLACKBIRD, J., concurs in result.

LAVENDER, J., dissents.